UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-282-GWU

DAVID GRANT MOYERS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

 Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Id</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, David Grant Moyers, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of carpal tunnel syndrome, syncope and borderline intellectual functioning. (Tr. 12).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ found that Mr. Moyers retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 14-18).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 49, eighth grade education, and history of work as a carpenter, press operator, and machine cleaner could perform any jobs if he were capable of lifting 20 pounds occasionally and 10 pounds frequently, and also had the following non-exertional limitations.  He: (1) could not climb ladders, ropes, or scaffolds; (2) could perform no more than "frequent" handling; (3) needed to avoid all exposure to workplace hazards such as unprotected heights and dangerous machinery, as well as to temperature extremes; (4) should avoid concentrated exposure to vibration; (5) had the capacity to understand and remember simple tasks, sustain attention and concentration on tasks requiring minimal judgment for two-hour segments during an eight-hour day; and (6) could relate adequately to others in routine work settings and adapt to routine task demands.  (Tr. 52).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 53).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff makes three arguments on appeal.  First, he asserts that the ALJ's residual functional capacity was not supported by substantial evidence because it contained no restriction attributable to carpal tunnel syndrome.  Second,

he says that the opinion of his treating physician was not properly evaluated. Third, he argues that the mental restrictions found by the ALJ are not supported by substantial evidence.

**1. Restrictions attributable to carpal tunnel syndrome**

The plaintiff's first argument is that the ALJ committed error in finding carpal tunnel syndrome to be a "severe" impairment because she "asked the vocational expert to assume frequent handling, which equates to unlimited handling for two-thirds of the work day" per Social Security Ruling (SSR) 83-10. Memorandum in Support of Plaintiff's Motion for Summary Judgment, Docket Entry No. 12, at *12. She adds that "deficits in gross manipulation due to the claimant's carpal tunnel syndrome, as found by [non-examining state agency reviewer] Dr. [Robert K.] Brown were improperly omitted from the hypothetical on which the ALJ relied." Id.

The plaintiff concedes that his family physician, Dr. Maria Cristina Atienza, prepared a medical assessment form in such a way as to literally indicate that he would have no limitations on handling, fingering, or reaching despite a diagnosis of carpal tunnel syndrome (Tr. 389), but suggests that this was due to a misunderstanding of the form. Nevertheless, the fact remains that neither Dr. Atienza or consultative physician Omar Chavez, who noted a positive Tinel's sign in both hands and a mild decrease in grip (Tr. 393), listed any functional restrictions from this condition. While the non-examiner, Dr. Brown, did check a box on a form

7

indicating a limitation on handling/gross manipulation, he qualified this by saying that the plaintiff was limited to "frequently" handling objects. (Tr. 399). The ALJ did not err by providing this restriction to the VE.

### 2. The treating physician opinion

On the second issue, the plaintiff points to an assessment completed by Dr. Maria Cristina Atienza on June 22, 2009. Dr. Atienza started treating Mr. Moyers on February 16, 2009 for complaints of syncopal episodes, anxiety, and carpal tunnel syndrome. (Tr. 359). His blood pressure was elevated, and he reported having an EMG/NCV test seven years previously which was positive. (Tr. 310, 358). The physician's notes are difficult to read, but she appears to have recommended a further workup for syncope, while noting that he had no insurance. (Tr. 360). The next recorded office note is from May 18, 2009, at which time she reported his blood pressure was still not controlled, he was noted to be wearing a "cockup wrist splint" for carpal tunnel syndrome, and he was prescribed medication for depression, anxiety, and reflux disease. (Tr. 420-1). Finally, an office note from June 22, 2009, to the extent it is legible, related that Mr. Moyers' blood pressure went to 60/40 when he had his syncopal episodes, but he could not afford a cardiology workup. (Tr. 418). He also appeared to be having side effects from medications, and complained of carpal tunnel symptoms going up both arms. (Id.). Dr. Atienza prescribed medications for hypertension and depression and appeared to

recommend following up the carpal tunnel complaints with a new EMG, which the plaintiff said he could not afford.  (Tr. 419).

With this background, Dr. Atienza completed a physical medical assessment form limiting Mr. Moyers to lifting less than 10 pounds, sitting 4 hours and standing and walking 4 hours in an 8-hour day, with the opportunity to sit and stand at will, "occasionally" twisting, stooping/bending, crouching, and climbing stairs and ladders.  He needed to avoid all exposure to extreme cold and heat, wetness, humidity, noise, pulmonary irritants, and hazards such as machinery and heights.  Somewhat confusingly, she checked boxes indicating that he would have no restriction on reaching, handling (gross manipulation), fingering (fine manipulation), feeling, and pushing/pulling, but noted that he had carpal tunnel syndrome shown by positive EMG testing.  (Tr. 388-9).

In discussing Dr. Atienza's opinion, the ALJ noted that her testing had shown normal respiration, normal cardiac function, intact musculoskeletal function, a normal gait, and normal straight leg raising, and an electrocardiogram was normal.  She briefly dismissed the opinion because "it is not supported by Dr. Atienza's own physical examinations or diagnoses."  (Tr. 15).

As the plaintiff points out, the opinion of a treating physician cannot be rejected unless the ALJ gives "good reasons" for doing so, pursuant to 20 C.F.R. § 404.1527(d)(2).  Wilson v. Commissioner of Social Security, 378 F.3d 541, 544

(6th Cir. 2004).[1] Furthermore, if the ALJ declines to give the treating source opinion controlling weight, she is required to balance several factors in determining the weight to which it is entitled, including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. Id. The reasoning must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *12.

Since the ALJ's brief discussion of Dr. Atienza's opinion does not meet the standards for assigning a particular weight, a remand will be required for consideration of the balancing factors. Cole v. Commissioner of Social Security, 2011 WL 2745792 at *6 (6th Cir. July 15, 2011). The ALJ should also provide good reasons for the weight actually assigned the opinion. The reasons given in the present decision focus on normal findings by the physician and completely ignore abnormal findings such as blood pressure abnormalities and the plaintiff's

---

[1] The Commissioner concedes Dr. Atienza is a treating source. Motion for Summary Judgment, Docket Entry No. 13, p. 7.

documented history of an abnormal EMG test. This is true even if Dr. Atienza's opinion is not ultimately entitled to controlling weight. Id. at 9-10.[2]

### 3. The mental restrictions

Although family physicians diagnosed depression and/or anxiety (e.g., Tr. 240, 417, 420), Timothy Boggs, Psy.D., was the only examining source to discuss restrictions. Dr. Boggs conducted a consultative psychological evaluation on March 9, 2009 and listed impressions of a dysthymic disorder and borderline intellectual functioning, with a Global Assessment of Functioning (GAF) score of 55. (Tr. 335). A GAF score in this range reflects moderate symptoms or moderate impairment in social, occupational, or school functioning per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. Dr. Boggs made several non-specific statements, such as speculating that Mr. Moyers might experience difficulty "acquiring employment" and that his "prognosis regarding employability is judged to be guarded" (Tr. 335-36), but in terms of restrictions found that he would be mildly to moderately impaired in his ability to adapt and respond effectively to pressures in normal work settings (Tr. 336).

---

[2] In addition, the decision should make it clear that the ALJ considered the effect of Dr. Atienza's subsequent medical records (Tr. 412-17) on the reliability of the non-treating assessment, if it is to be accepted. Blakley v. Commissioner of Social Security, 581 F.3d 399, 409 (6th Cir. 2009).

State agency psychologists H. Thompson Prout and Dan Vandiver reviewed the record and opined that Mr. Moyers would be moderately limited in his ability to understand, remember, and carry out detailed instructions, and to respond appropriately to changes in the work setting. (Tr. 339-40, 382-3). In Part III of the form, provided to record "elaborations on the preceding capacities," they stated that they gave the opinion of Dr. Boggs great weight, and listed a capacity to perform tasks consistent with the factors given in the ALJ's hypothetical question.

The plaintiff points out that the ALJ indicated that she would give "significant weight" to Dr. Boggs's opinion, and "great weight" to the state agency psychologists (Tr. 16), but that the hypothetical question was inconsistent with all of the sources.

The Commissioner's regulations inform claimants that he "[g]enerally . . . give[s] more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). "In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, at *3. However, the ALJ "must explain in the decision the weight given to the opinions of a State agency . . . psychological consultant . . ., as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources . . . ." 20 C.F.R. § 404.1527(f)(2)(ii).

The ALJ provided no rationale for giving more weight to the non-examining sources than to the examiner, Dr. Boggs. Nor is it clear that the hypothetical factors are consistent with the examiner's limitations on adapting and responding to pressures in normal work settings. Under the regulations, this deficiency should be addressed on remand.

The decision will be remanded for further consideration.

This the 9th day of August, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**